Mr. Lurie, you may proceed. Good morning. My name is Tom Lurie. I'm here on behalf of CHEETAH OMNI LLC. The primary issue in this case is construction of the term optical signal. The District Court construed it as light beam carrying information. On the other hand, the unambiguous and undisputed record in the Patent Office is contrary to that construction. The only way for this Court to affirm the District Court's construction in this case is to decide that the prosecution history is irrelevant to claim construction. Here we have a situation where… Couldn't we find that the specification upon which the Court relied is even more important than your points on prosecution history? If there was something in the specification that was contrary to the prosecution history, that would be true. But there is nothing in this case, and Mitsubishi has not cited anything in this case that requires an optical signal to carry information in the specification or otherwise. We can find in the specification, however, many instances where the optical systems are associated with information carrying, can't we? Absolutely, and there is no dispute about that. Why couldn't the District Judge perceive then, even based on the word signal, that a signal is something which carries information? Because, first of all, signal is not necessarily something that carries information. The term signal, and especially in this… I'm trying to think of… I mean, if your claim term had been optical beam, I would agree with you, but a signal always is signaling something, isn't it? Isn't it imparting some information that the traffic signal is telling me to stop or go? A flag signal on the hillside is communicating to me something in Morse code. Wouldn't a signal, and particularly in light of the rest of the specification, wouldn't a signal carry information? The answer is no in this case. It may be true in other cases, perhaps, but this is about optical information. There are two answers to that. First of all, the patent, in at least two instances, uses the terms optical beam and optical signal interchangeably. One example of that is at column 13, lines 46 through 51. Column 13? Yes. 56 through 51. Yes. And it actually uses the language optical beam, as I suggested to you, but that's not the claim language. The claim says signal. That's correct. But it identifies item 20, first as an optical beam and then as an optical signal. I'm sorry, I have it backwards. Actually, first as an optical signal and then as an optical beam. So it's using those terms interchangeably, which indicates that the optical signal is not necessarily carrying information. And it does the same sort of thing, actually, in the next column over, column 14, lines 35 to 39. It's got the same kind of use of beam and signal interchangeably. So the other thing we know is what those skills in the art understand optical signal to mean. And we've got a couple of pieces of evidence for that. First, we have the patent office. The patent office is the examiner, somebody skilled in the art. He reads the specification, he reads the claims, and he does a search. And what does he come back with? Digital projectors. And there's no dispute that the light, the optical signal that he said was in the claims, was the light carrying no information until it's ultimately modulated by the systems. I think I've got the broadest reasonable interpretation. But the question now is what is the correct interpretation? That's true. It's the broadest reasonable interpretation consistent with the specification, however. The patent office cannot just pick a word out of the air and give it the broadest meaning in English. The law is, and this was in 2005 in Phillips, it's the broadest reasonable interpretation in light of the specification. So there might be a different instance in my judgment in the final history. We know what the examiner did, but we also know that the applicant didn't acquiesce in that interpretation. And the applicant traversed the prior order on a different ground than the light signal didn't have the information. So as I say, examiners may make a mistake. You'd have a stronger case if it was clear in the record that your client acquiesced in the examiner's understanding and relied on it in order to traverse a rejection. And in fact, that's exactly what happened. Well, interestingly, the examiner found two prior art references, both digital projectors, and the only traverse was that those are not prior art. The examiner went back and did a second search, found another digital projector, You got around that around the priority date, didn't you? On the first time, priority date. The second time, the only change that was made was to incorporate a dependent claim and then take those claims and have them locked. There was never a traversal. In fact, that's a very important point on our side, we think. Dr. Islam could easily have overcome all the references cited by the examiner by simply saying, Well, those don't have an optical signal because there's no information there. He did not do that. In fact, he amended his claim to add a different limitation in order to overcome those rejections. So he did acquiesce as far as optical signal was concerned. That included light. And in his IDS, he included references that used light not carrying information as the optical signal. This is an undisputed public record that the term optical signal in this patent includes light carrying no information. The other things I would indicate to you in terms of those skills of the arts. You say it's undisputed? I don't think there's any dispute that the patent office decided that optical signal in this case includes light that doesn't carry information. Now, before the district court, am I correct that you conceded that the specification always refers to the optical signal as carrying information? No. No, what we said was there's nothing in the specification that is clear about that. That was the point I was making. That the patent doesn't say one way or another whether the optical signal carries information. And there are instances in the specification does have disclosure of optical signals that carry information. That was the point I was making. And I pointed out that the patent doesn't get into the details of what's in the optical signal. The point I was referring to is where the court says everything in the specification relates to carrying information. That's true. And your response is that's true. Everything in the specification is information carrying. In which case we come back to Circuit Judge Newman's point that under the broadest reasonable reading, they could have construed this as broader than the information carrying signal disclosed in the specification. What I actually said was, the question was does it relate to carrying information? And yes, every embodiment relates to carrying information because you can carry information or not in every embodiment. There's no embodiment that's solely directed to not carrying information. That was my answer. That was what I was focused on, what it relates to. What would you do with a case, this comes back to a point that the Chief Judge made earlier in a different iteration. What would you do with a case in which the final history of the patent office clearly showed, for example, that the signal doesn't carry any information? But let's assume that the patent was written in such a way that actually says my optical signal carries information so it's very, very clear in the patent. The history of the PDO would be irrelevant, wouldn't it? I agree. We don't have that case. Well, that's your problem. The problem is that there's no such thing as 100% certitude when it comes to claim construction, otherwise you wouldn't be here if there was. So the question is, how many data points are there in the specification that support your argument? I'll give the two I mentioned about optical reading. The other ones I'll give you examples of are the two examples where the patent specifically talks about the optical signal carrying information. And what's important about those, and the two examples of that are at column 18, lines 65 to 67, and column 20, lines 14 to 18. If, as the court construed optical signal, it means light beam carrying information, then what the patent says is that the significant cost savings in processing light beams carrying information, carrying information, it would be redundant to say carrying information in those sentences if light beam, or excuse me, optical signal means carrying information.  Just the opposite, when Dr. Islam wanted to talk about light beams, or excuse me, optical signals carrying information, he did so explicitly. And where he doesn't do so, there's no reason to say anything further. I say in my rebuttal time, the court has... You may preserve it. Thank you, Mr. Lurie. Mr. Belusco.  Optical signal connotes, by its very nature, that it's imparting or carrying information. We start there. We then go to the specification. The specification's very clear in this, that it's directed to the processing of information. There's quite an expansive specification here, talking about multiple embodiments,  in the overview section, not now a specific... We know what's there in your favor. It seems to me to be helpful to me if you would just rejoin immediately to what your adversary said when we asked him, which we understood was very important, what are the data points in the patent that support his point of view? And he cited to his argument about optical beam, optical signal. Maybe you should start there. And then the last three points that he mentioned that were in his specification. Would be helpful to me. Well, let's start with optical beam, optical signal. Because the overview here is that every embodiment shows that it's carrying information, when you're referring to it as number 20, either as optical signal or the same number as optical beam, it's already carrying the information. That's what the whole specification shows. So there is nothing there that is going to distinguish it. Well, the beam is carrying the information and the signal is carrying the information. Exactly. Because that's all that's shown here. As Mr. Lurie pointed out, in connection with... Now, in that respect, presumably your point is strengthened by the fact that there's no clear evidence anywhere in the spec of a signal that's not carrying information. That's absolutely right, Your Honor. What we do have in the spec, of course, is when we get to figure 15, which I think is very important here, because it is the one embodiment that actually, as arguably shows the entire claims, 18 and 19 here. Are you going to speak to the other two data points, your evidence of column 18 and column 20? I just want to be thorough here, be as thorough as we can. His point on those was that the signal carrying information, he says, well, it would be redundant to say carrying information if the signal already embodied that meaning. Well, I think that it isn't really redundant here, it's just emphasis here, that it is carrying information. Everything we're talking about is communication of information, and the information, even if we get to, for example, figure 15, divides it into two types of information, header information, signal payload, different types of information that are carried in the optical signal here. There was also a reference, Your Honor, to this acquiescence. I'd like to bring that up also and refer you to the record at A1934 when the DeWald and Chin references were raised, and he said there was acquiescence. In fact, there is an acquiescence, because, again, they put in the language, without addressing the veracity of the examiner's art rejections, and solely for the purpose of advancing this case expeditiously to issuance, applicant amends independent claims 113 and 18 to include allowable subject matter. So there was no acquiescence to anything that the examiner implicitly said about light being an optical signal. It's not acquiescence to narrow your argument to advance the prosecution? I think that as they've stated it here, it's not acquiescence to the notion that light is now an optical signal. It is an acquiescence that I'm going to narrow my claims with some other limitations, which aren't dealing with the term optical signal, but it's not in any way an acquiescence to, yes, light is an optical signal in this path. Now, one thing that has come up here is I think that the specification is very clear, and we've raised all those examples. You've seen all those examples, and I think figure 15 is particularly informative here, because it is the only figure that captures arguably the divide and separate or two separate steps of the method claim. But I think that the analysis at that point really ends under what I see as Philips generally, because Philips stands, of course, for the proposition that the specification is always highly relevant and usually dispositive, and this is one of those instances. The effort being made here, and interestingly enough below, was to avoid the specification generally, but instead to rely on everything in the prosecution history. But what happened at the Patent Office, whatever they did or didn't do, can't overturn what's here in the spec. The spec guides this, and as this court has found both in the Biogen case and more recently in the Telecordia matter, you can't have something in the prosecution try to enlarge the scope of what's already there in the spec or to trump the spec in some way. That's not permissible. So if indeed the examiner did a broadest reasonable construction and it's something broader here, that isn't the correct construction that should apply in the context of looking at the specification here. And for certain, you cannot avoid that specification in trying to bootstrap an argument from looking at a piece of prior art, what may have happened in the prosecution history, to somehow now lean over the specification here. So it's very clear that everything here supports a light beam carrying information, and the analysis of the claims and the spec get you there, and nothing in the prosecution history can trump that. Unless you have any more questions for me? Okay, thank you Mr. Belusco. Mr. Ruri, you still have four and a half minutes. One of the things I wanted to mention is the Sienna case, and I think that's very instructive here because it shows what people of skill in the art understand the term optical signal to mean in this art. Sienna is a fairly well-known maker of optical communication devices. The patents in those cases were solely about communication devices, and yet the inventors talked about information-carrying optical signals and non-information-carrying optical signals. If, in the art, optical signal always meant signals that carry information or information carrying light, then there would be no such thing and no need to say non-information-carrying optical signals. What the Sienna case shows is that optical signal is more than just carrying information. And we have the dictionary definition also that we cited, which says that an optical signal is a signal that contains optical power. The only thing the dictionary says it contains is optical power, not information. And then it talks about how it can be transmitted. It can be transmitted through light beams and other things. I agree that one can always go to the scientific technological knowledge of the field. But I do have trouble. You have to consider that, however, in the context of the specification. You review the specification in the light of all of the examples that are presented. And there is a stage at which one can no longer have recourse to the general knowledge of the field. That is what you're asking us to do. So it would be helpful to me if you could concentrate on why, in this case, which I think is a departure from the general rule, that's what should be done. The reason I don't think it's a problem in this case is because there is nothing in the specification that says optical signal must carry information. The only reason that Mitsubishi says it must is because they say, well, this is only about communication systems. And therefore, communication systems have to carry information. And we have the Sienna case that shows that's not true. If there was something expressed in the specification that said an optical signal always carries information, I would agree 100% with you. The problem is there is nothing like that. You have the words optical signal. You have them used interchangeably with optical beam. You have the word signal that's been modified by saying carrying information. Those things would indicate that, in fact, the optical signal, in this case, is not carrying information or not always carrying information. But you don't have anything expressed. So it's ambiguous. So that's why you look at the prosecution history. What did the examiner do? And, again, in Phelps, it's not just broadest reasonable interpretation. What Phelps says is the PTO determines the scope of claims and patents not solely on the basis of claim language, but upon giving claims their broadest reasonable construction in light of the specification as it would be interpreted by one of ordinary skill. This is 2005. Unless you're going to say the Patent Office violated its requirements, and there's no evidence that they did so in this case, because, again, there's no expressed statement to the contrary in the patent specification. No, you really have to ask a different question. And that's why the one of ordinary skill, looking at the specification, where in every example, without exception, the beam is a signal carrying information, nonetheless, that the inventor not only intended something else, but is entitled to something else. Yes, that would be true if it was the case that there was no question that the inventor intended that the phrase optical signal meant carrying information. But the fact that you have the modifier unmodulated in front of optical signal in every system claim, and then it gets modulated later on in the claim, again, indicates that the optical signal is not necessarily carrying information in this patent. And you have the examiner, the Patent Office examiner, who looked at this. If you were correct that anybody of skill in the art reading this would know that optical signal has to carry information, why did the examiner cite only references that didn't carry information? There's no answer to that question. And why didn't Dr. Islam simply say, well, you can't cite those references against me. Those clearly don't carry information. I can defeat those references without any change to my claims. He didn't do that. He changed his claims because he understood. I'm over my time. Thank you. Mr. Lurie, I just want to comment that I miss Ernie Brooks, and I'm delighted to see that you're carrying on Mr. Brooks' tradition in filing crisp and short briefs, which is good for us, and also Mr. Brooks' taste in network. Thank you, Mr. Lurie.